*EX PARTE* GRAHAM, *IN RE* PLYLER v. ROBERTSON.

1. JUDGMENT—CONFESSION OF.—A statement in a confession of judgment on a note that it was given "for goods sold and delivered," is sufficiently specific, under Code, 384.

2. IBID.—IBID.—NOTICE.—Code, 385, supersedes Rev. Stat., 783, as to enrollment of judgments by confession, and an entry of such judgment in book of "Abstract of Judgments" is proper notice to subsequent purchasers.

3. IBID.—EXECUTION.—An order giving permission to issue execution on a judgment has the effect of reviving the judgment. Rights of parties here must be determined as they stood at time of levy, before expiration of first lien.

Before KLUGH, J., Lancaster, March, 1898. Affirmed.

Petition by Benjamin Graham in the case of Pleasant M.

Plyler *v.* Barbara Robertson *et al.,* to enjoin sale of land by sheriff under execution.

On 7th March, 1887, Samuel Robertson, being owner in fee of 500 acres of land, confessed judgment on a note to Pleasant M. Plyler, for $271, with interest at ten per cent. per annum. On same day the confession was filed by the clerk, numbered 6,729, recorded in book of pleadings and judgments, and entered in book of abstract of judgments. There is no book of "Confessions before clerk" in Lancaster County. In fall of 1892 or first part of 1893, this roll was taken out of clerk's office by plaintiff's attorney for the purpose of preparing execution, and was mislaid until October, 1896. November 11, 1887, Samuel Robertson conveyed the said 500 acres of land to S. A. Robertson, who had no actual knowledge of the judgment. Samuel died in 1888, and no administration has been had on his estate. June 16, 1889, S. A. Robertson executed a mortgage on this and other lands to the A. T. L. Mortgage Co. This mortgage was foreclosed, and at the sale on salesday in December, 1891, this 500 acres was bought by the petitioner. On the 5th of August, 1896, the plaintiff, Pleasant M. Plyler, instituted this suit against the heirs of Samuel Robertson and Benjamin Graham. The complaint alleges the recovery and entry of the said confession of judgment, that the same is a lien on the said 500 acre tract—alleges the conveyance of said land by Samuel Robertson to S. A. Robertson—the death of Samuel Robertson—the giving of the mortgage as above stated by S. A. Robertson to the mortgage company—the foreclosure of the same, and the purchase and entry into possession of same by the defendant, Benjamin Graham, subject to the lien of said judgment. The complaint further alleges the loss or destruction of said original confession of judgment. Also that plaintiff is without remedy for the enforcement of said judgment without the aid of the Court.

The complaint prays as follows, viz: First. That the roll of said judgment be restored, and the same declared a lien on the land in question in possession of the defendant, Ben-

jamin Graham. Second. That the 500 acre tract of land be sold under order of Court, and proceeds applied to the payment of the judgment, costs, etc. Third. For leave to issue execution on said judgment. Fourth. For any other relief the Court may deem proper. The defendant, Benjamin Graham, in due time answered the complaint, alleging among other things that said alleged judgment was absolutely null and void, because the statement attached to the confession was not sufficient, and because said judgment had not been entered up as required by law. Alleged further that both S. A. Robertson and defendant, Benjamin Graham, were purchasers of said land for value and without notice of said judgment. Further alleges that said judgment has been paid and that said alleged judgment never has been a lien on said land. The defendant, Benjamin Graham, by amendment to his answer, further alleges that if said judgment is a judgment and a binding lien on said land, it can only bear interest at seven per cent. per annum.

The portion of the referee's ( R. E. Wylie, Esq.,) report quoted in the opinion fully states the remaining facts. From judgment refusing the injunction the petitioner appeals.

*Messrs. R. E. & R. B. Allison,* for appellant, cite: *Statement in confession insufficient:* 51 S. C., 495; 12 Cal., 143; 19 Mo. App., 517; 38 Barb., 143; 20 N. Y., 447; 24 N. Y., 110, *325; 10 Ia.,370; 18 Cal., 576; 17 N. Y., 10; 16 Johns., 149; 10 Wis., 76; 28 Mo., 32; 30 Barb., 325; 12 N. Y., 215; 17 N. Y., 15; 17 S. C., 446; 16 S. C., 190; 41 S. C., 74. *Judgment not properly entered, and hence no notice to appellant:* Rev. Stat., 783; 40 Wis., 560; 10 S. C., 228: Code, 302. *Lien of judgment exists after death of party, but execution cannot issue until judgment revived:* 18 Am. Dec., 327.

*Messrs. T. Y. Williams* and *Ernest Moore,* contra. The latter cites: *Statement sufficient :* Code, 384; 27 N. Y., 568; 15 Ia., 152; 15 S. C., 44. *Judgment as entered became lien*

*on the land:* Code, 300, 301; 28 S. C., 78; 45 S. C., 79; Code, 385; 28 S. C., 38.

Mr. Justice Jones being disqualified by reason of his former connection with the case, Judge Ernest Gary was appointed to sit in his place.

Jan. 23, 1899.    The opinion of the Court was delivered by

JUDGE ERNEST GARY, acting Associate Justice.    The facts of this case are fully set out in the report of the referee, which was adopted by the presiding Judge as "satisfactorily and ably determining all the questions involved."    The exceptions need not be considered in detail as some of them raise the same question in different form.

The first question that will be considered is, whether the *statement* in the confession of judgment, out of which the indebtedness arose, was a compliance with the requirements of the statute.    Section 384 of the Code requires that the confession of judgment must state concisely the facts out of which the indebtedness arose.    It was not the intention of this section that there should be a *detailed* statement of the facts out of which the indebtedness arose, nor that it should furnish *all* the information necessary to determine its validity.    The evident intention was simply to provide a clue from which creditors could investigate for themselves.    This subject is so fully discussed in *Weinges* v. *Cash,* 15 S. C., 44, that we do not deem it necessary to even refer to other authorities for the purpose of showing the intention of the section just mentioned.    The confession of judgment by Samuel Robertson to Pleasant M. Plyler contains the statement that the note therein mentioned was given "for goods sold and delivered" to the said Samuel Robertson by the said Pleasant M. Plyler; this, we think, was a specific statement of the consideration of the note, and a sufficient clue to enable creditors to investigate the facts. The exceptions raising this question must be overruled.

The next question raised by the exceptions is, whether the

confession of judgment was null and void on account of the failure to enter the proceedings in the book called "Confessions of judgment before clerk." Section 783 of the Revised Statutes, in making provision for the books to be kept by the clerks of court, contains the following, as the 9th subdivision of said section: "Confessions of judgment before clerk—In which shall be entered such proceedings kept with reference to the number of enrollment in book of abstracts, instead of page, together with an index to this particular volume, in the names of defendants." The 6th subdivision of said section is as follows:

6. "Abstract of judgment—In which shall be entered such case wherein judgment may be signed (including each case in dower, partition and escheat, after judgment or final order),with separate columns, showing number of enrollment, names of parties, cause of action, attorney, date of judgment, amount of judgment, time of bearing interest, how judgment obtained, costs (separating attorney, clerk, sheriff, witnesses and total), kind of execution, date of issuing, sheriff's return, when renewed and satisfaction, together with an index by the names of defendants, and a cross index by the names of plaintiffs, each alphabetically arranged, and kept in separate columns, with the number of enrollment of judgment." The act of the General Assembly containing the above provisions was passed in 1839, long prior to the Code of Civil Procedure. Section 385 of the Code provides as follows: "Sec. 385. The statement may be filed with the clerk of the Court of Common Pleas, or with a trial justice, if the amount for which judgment is confessed shall not exceed $100, who shall enter a judgment indorsed upon the statement for the amount confessed, with $5, the plaintiff's attorney's costs, when the confession is entered by an attorney, and the usual fees provided by law to the clerk of the Court of Common Pleas or trial justice, as the case may be, for entering up judgment and issuing executions in any case, together with any necessary disbursements of the plaintiff. The statement and affidavit, with the judgment in-

dorsed, shall thereupon become the judgment roll.   Execu-
tions may be issued and enforced thereon, in the same man-
ner as upon judgments in other cases  in such courts."   It
will be observed that subdivision 9 simply requires the clerk
to enter the proceedings in the book therein mentioned, and
does not declare what will be the effect or consequnce of a
failure to enter the proceedings in  said  book.   In order,
therefore, to determine the effect of the failure to enter the
proceedings in the book, contemplated by the act of 1839, it
will be necessary to take into consideration the purpose for
which that law was enacted.   The evident intention when
thas statute was enacted in 1839 was to afford protection to
subsequent creditors and purchasers for valuable considera-
tion, who otherwise might not have had notice of the judg-
ment;  but while this was necessary under the old act of
1839, this necessity was superseded by the provisions of the
Code, which devotes an  entire  chapter  to  this  subject.
Under section 385 of the Code, neither the enrollment of the
judgment nor the right to issue execution thereon is depend-
ent upon the fact of the proceedings being entered in the
book mentioned in subdivision 9 aforesaid.   On the contrary,
the confession of judgment is complete in all its component
parts without the compliance with the act of 1839.   And
subdivision 6 of section 783 gives ample notice of the judg-
ment, as *all judgments* are required by law to be entered in
the book therein mentioned.    While it might be well to give
notice of the confession of judgment in more than one mode,
still if a party has notice from one source, he cannot com-
plain that he did not have notice from another source, when
the judgment was duly entered in the book called "Abstract
of Judgment," as required by the Code.   By this entry a
lien was created upon the real estate of the judgment debtor,
and was constructive notice to all persons dealing with ref-
erence to the property affected by such lien.   We do not
think it was the intention of the General Assembly that this
constructive notice should be given in two different modes,
but rather that the provisions of the Code, adopted subse-

quent to the act of 1839, are ample within themselves to afford the necessary requirements appertaining to confessions of judgments. *Ellis* v. *Woods,* 9 Rich. Eq., 19. The exceptions raising this question must, therefore, be overruled.

The 7th exception is as follows: "Because ten years had elapsed since the date of the alleged judgment, without revival of the same, affecting the right of this defendant, and no execution had been issued or could issue until renewed, and the Circuit Judge erred in dissolving the pending injunction continuing the levy made under the defective execution, and permitting the sheriff to sell the said tract of land thereunder and confirming the referee's report."

The "Case" contains the following statement of facts by the referee: "That after the delivery of said original confession of judgment by Ira B. Jones, Esq., to T. Y. Williams, to wit: On the 17th day of August, 1896, an independent proceeding was instituted by Pleasant M. Plyler, by summons with notice and affidavit attached, for leave to issue execution on said judgment. This proceeding is entitled 'Pleasant M. Plyler, plaintiff, *vs.* Samuel Robertson, defendant.' The summons, notice and affidavit were served on the said heirs at law of Samuel Robertson, deceased, and upon the defendant, Benjamin Graham, requiring them to show cause why execution should not issue on said judgment. The defendant, Benjamin Graham, answered, making substantially about the same defense as set up in his answer to the first action. He further plead the former action in bar, and alleged that no execution could issue, there never having been administration on the estate of Samuel Robertson, deceased. On the 10th day of October, 1896, Judge Watts granted an order for leave to issue execution on said judgment, but concluded the same in the following language: 'I hold that under sec. 310, execution may issue upon final judgment or decrees in any time within ten years. Such being the case, I give permission to plaintiff to issue execution in said judgment, as it is not ten years since it was

obtained. But I do not pass upon the validity or sufficiency
of said judgment. Neither do I pass upon or adjudge the
right of any of the parties above named. Their right to
assail the judgment in any manner they may be advised is
expressly reserved to them.' On the 29th day of October,
1896, execution was issued on said judgment, and the sheriff
of said county, on the 9th day of November, 1896, levied
upon the said 500-acre tract of land, and thereafter adver-
tised said land for sale. Upon the petition of Benjamin
Graham, showing the levy upon said land and the advertise-
ment for sale by the sheriff and the pendency of the action
to test the validity of the judgment, Judge R. C. Watts
granted a temporary injunction, restraining the plaintiff and
the sheriff from proceeding further with the sale of the land,
and required each of them to show cause before Judge With-
erspoon at his chambers, on the 10th day of December, 1896,
why a permanent injunction should not be granted. The
plaintiff appeared and answered the rule to show cause.
Judge Witherspoon, on the 12th day of December, 1896,
granted an order continuing the restraining order of Judge
Watts 'until the cause between the same parties as to the
validity of the lien of the judgment upon which plaintiff's
execution was issued, now pending in the Court of Common
Pleas for Lancaster County, shall have been determined.'
After the levy as above stated, the successor to Sheriff Hood
(who made the levy) on 22d December, 1896, continued the
levy by indorsement on the execution. I should have stated
that Judge Buchanan, on the 14th day of March, 1897, made
an order in this case, reciting that 'a levy has been made
upon certain lands in possession of the defendant, Benjamin
Graham, under an execution issued upon the judgment in
favor of Pleasant M. Plyler *v.* Samuel Robertson, and that
a sale of said lands under said levy has been temporarily
enjoined,' and ordering 'that pending the hearing of this
cause the said levy heretofore made under the judgment in
favor of Pleasant M. Plyler *v.* Samuel Robertson be con-
tinued in force,' and 'that the status of the rights of the

parties under the levy remain as it was at the time said levy was made until the final decree of this Court.' " Whatever might have been the legal complications, if the order of Judge Watts was the only one in the cause, yet, when that order is construed in connection with that of Judge Buchanan, it is evident that the case should be considered with reference to the rights of the parties as they existed at the time the levy was made, which was before ten years had elapsed since the judgment was confessed. The order giv·ing permission to issue an execution on the judgment had the effect of reviving the judgment. The rule is thus stated in *McLaurin* v. *Kelly,* 40 S. C., 488-9 : "This Court has had occasion recently to examine critically the.mode now provided for the renewal of judgments and executions. See *Lawton, adm'r.,* v. *Perry, as trustee, et al., ante,* 255. It approves the method here adopted. * * * Suppose we were to admit that the judgment in summary process was irregular for not having been entered on the minutes of the Court by the clerk, we apprehend the respondent is estopped from denying the fact of such judgment; for when he was served with the summons to renew the execution, he was bound to make any and all defenses he had to such renewal; and certainly no better defense could have been interposed thereto than that no such judgment was in existence. But this he did not do. On the contrary, he *consented* to an order renewing such judgment. This matter has become *res adjudicata as to him. Freer* v. *Tupper,* 21 S. C., 83. In the case last cited, the present Chief Justice took particular pains, in concurring in that judgment, to use this language : 'I concur in the result upon the ground that the question as to the legality and sufficiency of the judgment and execution was adjudged by the order to renew the execution; and Schulty being estopped from raising that question, one who claims under him, since the sale, is likewise estopped.' " The exceptions raising this question are also overruled.

For the reasons hereinbefore mentioned, the appellant

cannot successfully set up the plea of purchaser for valuable consideration without notice.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.